# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Red i-phone<br>Seizure No. 2023270400066802-001<br>("Target Device 1") | Case No. **23mj2330-KSC** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Secs. 841, 846 | Distribution of Contr. Subst. (Conspiracy) |
| 21 USC Secs. 952, 960, 963 | Importation of Contr. Subst. (Conspiracy) |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Cesar Valdivia*
*Applicant's signature*

Cesar Valdivia, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: June 28, 2023

*Judge's signature*

City and state: San Diego, California       Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Cesar Valdivia, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices, (Collectively, the "**Target Devices**"):

>Red i-phone
>Seizure No. 2023270400066802-001
>("**Target Device 1**")

>Grey AT&T flip phone
>Seizure No. 2023270400066802-002
>("**Target Device 2**")

>Dark Blue Motorola phone
>Seizure No. 2023270400066802-003
>("**Target Device 3**")

(collectively, the "**Target Devices**") as further described in Attachment A-1, A-2, and A-3 and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 (Distribution of Controlled Substances and Conspiracy) and Sections 952, 960, and 963 (Importation of Controlled Substances and Conspiracy) (collectively, the "**Target Offenses**") as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Jaime VALENCIA Alvarez ("Defendant") for importing approximately 47.75kgs (105.28 lbs) of methamphetamine from Mexico into the United States and the distribution of controlled substances within the United States. The **Target Devices** are currently in the custody of Homeland Security Investigations (HSI) located at 2055 Sanyo Avenue, San Diego, California 92154 within the HSI Field Office.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August 2008. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is

underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States and/or to distribute controlled substances within the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and/or distribution of controlled substances within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and/or distribution of controlled substances within the United States;

   d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States or distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On April 19, 2023, at approximately 1:29PM PST, a white Ford F-350 pick-up (hereafter "Vehicle 1") entered the United States from Mexico at the Otay Mesa Port of Entry through vehicle lane number 7. The driver and sole occupant was Blanca CARDENAS (hereafter "CARDENAS"). A Customs and Border Protection (CBP) Canine Enforcement Officer (CEO) screened Vehicle 1 with the officer's certified narcotics detection dog and received a positive alert of Vehicle 1. A CBP Officer obtained a negative declaration from CARDENAS and CARDENAS stated she was going to San Diego, California. Vehicle 1 and CARDENAS were subsequently referred for secondary inspection. A CBP Officer asked CARDENAS to exit the vehicle and CARDENAS was escorted to a security office, out of view of the secondary inspection area. A CBPO scanned Vehicle 1 with a Z-Portal x-ray machine. The CBPO observed anomalies within Vehicle 1.

8. In addition, a CBPO observed packages concealed in the tailgate of Vehicle 1. Based on training and experience, including having found packages similarly concealed in vehicles many times in the past which proved to contain drugs after field and lab testing, officers and agents believe the packages contained prohibited drugs.

9. To facilitate further investigation, the packages were left in place and not opened or inspected. Officers and Special Agents assigned to the San Diego Narcotics Enforcement Team (SDNET) task force opted to follow Vehicle 1 to its intended destination. Because of the exigencies of the situation and to avoid a longer delay which might cause the driver or any co-conspirators to suspect or detect that the packages had been discovered by law enforcement, investigators installed a GPS tracking device on

Vehicle 1 at approximately 1:40 PM PST, so Vehicle 1 and the driver could leave the Otay Mesa Port of Entry and continue to their intended destination. Prior to activating the GPS tracking device, a tracker warrant was submitted by a Homeland Security Investigations Special Agent. The tracker warrant was approved and signed by U.S. Magistrate Judge Karen S. Crawford at which time the GPS tracking device was activated.

10. Vehicle 1, being operated by CARDENAS, exited the Otay Mesa Port of Entry under constant surveillance by SDNET. Vehicle 1 was driven to a residence in Chula Vista, California where CARDENAS proceeded to park the vehicle and enter the residence. CARDENAS exited the residence moments later accompanied by two unidentified individuals. All three individuals left the premises in a separate vehicle for approximately one hour. Vehicle 1 remained parked in front of the residence, all while being under constant surveillance of SDNET. At no time did any persons enter or exit Vehicle 1. CARDENAS arrived back at the residence a short time later and entered Vehicle 1, where she proceeded to drive Vehicle 1 to Santa Ana, California.

11. Upon arriving at a McDonald's located in Santa Ana, California, CARDENAS exited the vehicle and entered the McDonald's. A short time later, a male, subsequently identified as Leopoldo SANTANA Ulloa (hereafter "SANTANA Ulloa") arrived at the McDonald's, entered Vehicle 1 and drove to a parking lot approximately 2 miles away located at 2101 S Lyon St, where law enforcement agents and officers observed SANTANA Ulloa accessing hidden compartments in the truck bed and tailgate of Vehicle 1, as well as in the spare tire underneath the truck bed. SANTANA Ulloa was observed pulling out large bags of what appeared to be a white crystalline substance out of the hidden compartments and spare tire as described above and place them into a large black trash bag. SANTANA Ulloa then placed the large black trash bag inside the passenger seat of Vehicle 1 and proceeded to leave the area.

12. SANTANA Ulloa was observed by law enforcement officers drive and park Vehicle 1 at a parking lot located at 1302 E Hunter Ave, just North of the McDonalds, next to a grey Toyota sedan (hereafter "Vehicle 2"). SANTANA Ulloa was seen retrieving the

large black trash bag from the passenger side of Vehicle 1 and place it inside the rear passenger seat of Vehicle 2. SANTANA Ulloa proceeded to drive Vehicle 1 back to the McDonald's where CARDENAS was located. Agents and Officers maintained eyes on Vehicle 2 while other officers and agents followed Vehicle 1 back to the McDonalds.

13. CARDENAS was observed getting back into Vehicle 1 as SANTANA Ulloa exited Vehicle 1 and began walking back towards the location Vehicle 2 was parked. SANTANA Ulloa entered Vehicle 2, and drove North towards Los Angeles, eventually pulling into narrow alley way located in the South Central Los Angeles area. A black mini-van (hereafter "Vehicle 3") was observed reversing into the same alley way where Vehicle 2 was parked. Law enforcement officers proceeded to make contact with SANTANA Ulloa and a male subsequently identified as Jaime ALVAREZ Valencia (hereafter "ALVAREZ Valencia"). When law enforcement officers made contact, SANTANA Ulloa was in the driver's seat of Vehicle 2 and ALVAREZ Valencia was in the driver's seat of Vehicle 3. Law enforcement officers observed the large black trash bag containing the suspected narcotics in plain view, inside the rear passenger seat of Vehicle 3.

14. Further inspection of the black trash bag located in Vehicle 3 resulted in the discovery of 47 packages, with a total approximate weight of 47.75kgs (105.28 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

15. During a post-Miranda interview, CARDENAS admitted that she was participating in illegal activity. CARDENAS admitted she was to be paid $2,500 USD to smuggle what she believed to be money into the United States. CARDENAS admitted she had smuggled, what she believed money on two prior occasions.

16. CARDENAS, SANTANA Ulloa, and ALVAREZ Valencia were arrested and charged with a violation of Title 21, United States Code, 841(a)(1) & 846-Conspiracy to Distribute Controlled Substances. While law enforcement officers were attempting to advise ALVAREZ Valencia of his Miranda rights, ALVAREZ Valencia spontaneously stated he did not know there were "drugs" in the vehicle.

17. The red i-phone **(Target Device 1)** and grey Alcatel flip phone **(Target Device 2)** were found on ALVAREZ Valencia's person and seized by Homeland Security Investigations (HSI) Special Agents (SA). Later, while searching Vehicle 3, SAs found the blue Motorola smartphone **(Target Device 3)** underneath the front passenger seat in a space between the seat and the door.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on March 20, 2023, up to and including April 19, 2023.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and

can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

23. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant involvement in the **Target Offenses**. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A-1, A-2, and A-3, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Cesar Valdivia*
_____
Special Agent Cesar Valdivia
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 28th day of June, 2023.

_____
Honorable Karen S. Crawford
United States Magistrate Judge

# ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The following property is to be searched:

    Red i-phone

    Seizure No. 2023270400066802-001

    ("Target Device 1")

Target Device 1 is currently in the possession of the Homeland Security Investigations located at 2055 Sanyo Avenue, San Diego, California 92154 within the HSI Field Office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 20, 2023, up to and including April 19, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States and/or to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and/or distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and/or distribution of controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States or distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 841 and 846, and 952, 960, and 963.